RECEIVED

JUN 14 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

**FILED**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

JUN 14 2021

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| Washington, William - a Resident of §<br>The TEXAS CIVIL COMMITMENT CENTER & §<br>Client of the TEXAS CIVIL COMMITMENT §<br>OFFICE §<br>　　　　　　　　　　　PLAINTIFF §<br>　　　v. §<br>§<br>Marsha McLane, the Executive Director §<br>of the TEXAS CIVIL COMMITMENT<br>OFFICE, Jessica Marsh-Deputy Director of<br>The Texas Civil Commitment Office,<br>Amanda Beltran, Rachel Kingston,<br>TCCO Case Mgrs., James Winckler, MTC Chief<br>Of Security, Michael Arenivaz, Security Officer | 1:21CV0521 RP<br><br>TRIAL BY JUDGE REQUESTED |

||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

### (A) COMPLAINANT'S BRIEF
#### (B)

1) 　The Defendant – At this time, TCCO Executive Director Marsha McLane is the controlling authority of the Texas Civil Commitment Program, as she **creates** and approves, it would seem; her own rules and policy, making opportunity or killing it. Her decisions either lead to a Resident's feelings of one thriving with the "semblance" of free citizens realizing their Constitutional Rights (which is hardly ever the case), or being treated like prisoners dying from congested heart failure when it comes to who the residents of the Texas Civil Commitment Center can associate with inside or outside the facility.

　　The failures or successes of residents are strengthened by strong family support, social networks by way of friendships, emotional encouragement, and if blessed, financial support to get through this soul killing perpetual program. Soul killing, because the Plaintiff has suffered the deprivation of his Constitutional Freedoms. Plaintiff has Fundamental Protected Constitutional Rights such as: Freedom of Choice, Freedom of Intimate Association and Social Activities, Freedom of Speech, and Freedom of Expression. The Constitution protects the right for The Plaintiff (Herein-Mr. Washington) to fall in love, have a Romantic Relationship with the Right to Marry, should he choose to do so, and the Freedom of Speech to profess those feelings and emotions. TCCO Executive Director Marsha McLane's job is to provide a "treatment" platform; not to make the choice of *who, how, what, when,* and *where* Plaintiff should make life changing, personally intimate,

1

decisions. These decisions belong to the Plaintiff, who's life this is to live, and the Plaintiffs' alone. Mr. Washington **is no**t a prisoner, or chattel property. I have one obligation and that is to take advantage of the therapy and attend those classes offered by the Defendant. That being fulfilled, _any_ other life altering decisions belong to **me** (i.e.- same-sex relationships or marriage, or wearing a "Black Lives Matter" t-shirt). Defendant McLane's actions, and that of her subordinates, are that of a Slave Master Mentality feeling that she/they can do and go unchecked treating residents, and Mr. Washington, any way she/they want to with a "so sue me" attitude; as families and relationships are destroyed.

This is reminiscent of the 'Barbados Slave Codes of 1661' having complete ownership of every single choice or decision a resident may make, travel, or earn. In the mean while I'm fastened to the whipping post of inequality, disenfranchisement, homophobia, and racial animus hoping for someone righteous to come and emancipate me constitutionally; only I'm not called a slave anymore. Sex offender is a fearful label and becomes a convenient excuse for everything taken as if I'm still 3/5[th] sub-human. Today I don't have to be hung from a tree or called the "N-----"word for an individual in authority to be considered racist or treat me as such. Lately we are shot in the back and have knees put on our necks. If it's happening out there in a free society, what do you think is happening in this facility out in the middle of nowhere Texas? She has no right!!

It doesn't matter how fancy she dresses the title up; her power **is no**t limitless. Nevertheless, any thoughts of equality, independence, or freedom are quickly dismissed with one goal in mind...maintaining **'Tot**al **Pow**er and **Absolu**te **Control'** over every single resident, proven by her actions. I am not alone; just the one willing to be the martyr, if it should come to that, because I know this lawsuit will cost me everything...freedom, possibly my potential wife, and life if I'm not given any relief from this court. As I've been referred to as the George Floyd of the facility... I pray not.

TCCO Executive Director Masha McLane used to be married to a Sex Offender. How this is not disqualifying her from holding the position she does, I do not understand, because there seems to be a Screaming Conflict of Interest., and Potential for Personal Bias and Prejudice tainted by her experience(s) (see: Houston Chronicle article" Left to Die" by: Eric Dexheimer) (2-11-21). Well I feel that there is a Great Possibility that this is why Marsha McLane has a propensity of having TCCO Case Managers, Destroy and Hinder many Resident Communications which may lead to Romantic Relationships including that of another Resident (Herein-Jane Doe) and the plaintiff Mr. Washington.

Furthermore, no one seemed to qualify into the equation the fact that residents would be here together for years with no exit plan or end date, and might possibly fall in love. No one saw the love resident Jane Doe and Mr. Washington had coming for one another, it was a best friendship which evolved into this serious love affair unseen and unplanned for, surely not by either one of them. When we were open with our therapist she encouraged us to

explore our feelings for each other. At that point she knew of everything as we had increasing confidence in her. It is understood that we should certainly have a Fundamental Right under the 1st and 14th Amendment to Freedom of Intimate Association and Social Activities, Peaceable Assembly, Freedom of Speech, Freedom of Choice, Freedom of Expression, and Right to Marry even as Civil Detainees. Defendants did not acknowledge or allow these rights for plaintiff finding he had entered into a romantic relationship. Therefore, Plaintiff is suing said defendants in their official and individual capacity and seeking (1) a **preliminary injunction** preventing the enforcement of these unconstitutional policies, which benefits the public interest, and (2) a **permanent injunction** barring enforcement of TCCO's Policies (3.12-Client Marriages and 3.29-Establishing Healthy Relationships), prohibiting same-sex resident couples from marrying, and (3) a **declaratory judgment** against TCCO's ban on client relationships/marriage to each other. On February 26, 2014, a district court in Texas issued a **preliminary injunction** prohibiting the state (of Texas) from enforcing any laws or regulations prohibiting same-sex couples from marrying or prohibiting the recognition of marriages between same-sex couples lawfully solemnized elsewhere. The Supreme Court decided (*Obergefell v. Hodges*, No. 14-556, 135 S. Ct. 2584 (June 26, 2015)). In summary the court declared that the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty. No longer may this liberty be denied to them. The Policies' (3.12-Client Marriages, and 3.29-Establishing Healthy Relationships) TCCO has in place are unconstitutional (see exhibits 1-2). To deny plaintiff this right falls below the minimum standards of civilized decency.

The policy (3.29- Establishing Healthy Relationships) Referred to as the *"GAY Policy" by staff,* is so infirmed that one would never overcome section V. "A potential partner **shall not** be approved to have a relationship with a client if... the person is on Civil Commitment...or is convicted of a sex crime", to ever get to Policy 3.12- Client Marriage, how can you have a marriage without the courtship which precedes it? This is infringing upon a resident's constitutional right to choose...the right to fall in love. Which includes, but is not limited to "Healthy Sexuality/acts, Healthy Relationships, Hugging, Kissing and No More Victims...etc., per treatment curriculum."

I also see this Prejudice and Implicit Bias in play when I was sanctioned on or about March 30th by J. Winckler and M. Arenivaz for sending Legal- (*I say*) First Amendment Protected Case Law Research Material Correspondence to another resident for legal guidance, as there were no other written rules in place or posted in the law library, or the dorms (see exhibit: Policy 3.21), when exercising my legal rights to challenge the Unconstitutional Policy in place (see: Ruiz v. Estelle). As the plaintiff sees it, the liberty guaranteed by the Constitution includes a fundamental right to have Access to Courts, and to freely choose one's intimate partner or spouse. These two TCCO policies (3.12-3.29) circumscribes this

fundamental right and violates Equal Protection and Due Process, and seem to be the moving force behind the deprivation of plaintiffs' right's. Because the Equal Protection Clause prohibits discrimination on the basis of sexual orientation and gender, TCCO would no more be permitted to deny access to marriage than it would be to permit, say, racial discrimination in public employment.

The Policies that do exist are purely cosmetic smoke and mirrors, and until today no resident has ever challenged them. Plaintiff can prove across the nation that other civil committed detainees have been allowed to have relationships, and marry, at/in the facilities with/to one another; having their Constitutional Rights recognized. TCCO refuses to do so, enforcing a policy(s) that deprives gay couples of the intrinsic societal value and individual dignity attached to the term "marriage".

## STATEMENT OF FACTS

2) Plaintiff is challenging Rules, and Policies/Procedures and attacking the constitutionality of policy 3.12 ( Client Marriages) and 3.29 (Establishing Healthy Relationships), as well as the language allowing TCCO carte blanche to do whatever they want and control any resident however they want, leaving Plaintiff with no constitutional freedoms where choice is concerned by way of intimacies, associations, speech, or otherwise in these particular policies promulgated by Defendant's - Marsha McLane - Executive Director of the TEXAS CIVIL COMMITMENT OFFICE, whom plaintiff is suing in her official and individual capacity - (*Hereinafter TCCO*), unconstitutional policies enforced by TCCO case managers, Amanda Beltran, (who is being sued in her official and individual capacity), Jessica Marsh-Deputy Director of TCCO (who is being sued in her official and individual capacity), and Rachel Kingston (who is being sued in her official and individual capacity). MTC staff Michael Arenivaz (who is being sued in his official and individual capacity), and James Winckler (who is being sued in his official and individual capacity). Defendants did cause a deprivation to the aforementioned, Mr. Washington, some acting under the color of state law, that imposed Restrictions on Plaintiffs' Right to choose, Freedom of Intimate Association, Peaceable Assembly, Freedom of Speech, Freedom of Expression and the Equal Protection Clause when they did irrationally treat Plaintiff differently than those similarly situated.

The unjust adverse administrative actions of official oppression; malicious intimidation; defamation and blacklisting intended to prevent Plaintiff from any progressive advancement in the program, perpetual sanctions; and have injured Plaintiff to the point of causing severe emotional distress including, but not limited to, the need of medication that has continued from June 2020 to present. To state a claim under § 1983, a plaintiff must allege that he was injured by "either a state actor or private party acting under color of state law." (Ciambriello v. County of Nassau,292 F .3d 307, 323(2d Cir. 2002).

The actions of nominally private entities are attributable to the state when those actions meet one of three tests: 1. The compulsion test: the entity acts pursuant to the coercive power of the state or is controlled by the state, or, 3. The joint action test or close nexus test: the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies. (Civil Rights Law > Section 1983 Actions> Elements > Color of State Law > State Agents).

3) The defendants Michael Arenivaz and James Winckler (on or about Oct. 8th,2020, again on or about April 7th,2021) did maliciously act in bad faith with the intent to harm Mr. Washington, even after being made aware that they were violating plaintiffs' rights, and what those rights consisted of; responding to Plaintiff "we know, but that's the way TCCO wants it, they don't want you two talking to each other and they're our employer". When M. Arenivaz was asked Why he's constantly messing with the Plaintiff, his response was "because I have nothing better to do," (05/06/21), and personally had plaintiff fired from his job of picking up trash in July-2020. Defendant Arenivaz asked "who gave you this job?" Plaintiff responded "the Administrative Captain", shaking his head defendant Arenivaz said "that's not gonna happen". Defendant then told plaintiff he was not allowed to perform his job duties until he "looked into it, go back to your dorm."

 Shortly thereafter plaintiff was notified that he no longer was allowed to pick up trash having plaintiff fired from his job. His aversion to plaintiff and resident Jane Doe's sexual orientation was obvious to MTC staff in particular, who told me to file a complaint because his treatment towards us was "just wrong." Other's said not to because, "you can't beat these folks and it's only going to make it worse for you. They're gonna retaliate some kind of way. Peace is more important than truth." I responded, *"somebody has to tell the truth."* These individuals participated in the course of retaliatory harassment, or knowingly acquiesced in its continuance with harsh and discriminatory enforcement,(i.e. deprived Plaintiff of his rights, property($557.00 package, but I'm not suing for money), and discriminated against him based on racial animus, such as, being forced to remove "Black Lives Matter" t-shirt, not being allowed to wear or buy anything pink, and sexual orientation to discourage his romantic relationship/association with another resident Jane Doe. Lastly, Access to Courts confiscating legal research material concerning 'Right to Marry', which is confidential (see policy 3.21), and sharing it with other staff, giving a thirty-day dorm restriction and six-month package restriction); in violation of his first and fourteenth amendment rights.

 The Supreme Court has held that a prisoner or detainee must demonstrate that he lost access to a past, present, or potential opportunity for litigation, and the actions of prison officials actively led to the denial of access. See Christopher v. Harbury, 536 U.S. 403, 414-15, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). Though this right does not require officials to actively assist with a prisoner's filings, it prohibits officials from erecting {2020 U.S. Dist.

LEXIS 9} barriers which are intended to "impede the right of access of incarcerated persons." Id. at 1102-03 (citations and internal quotations omitted). A detainee arguing his right to access the courts has been violated must also demonstrate an actual injury. Lewis, 518 U.S. at 349; Madrid v. Gomez, 190 F.3d 990, 996 (9th Cir. 1999). To show actual injury, plaintiff must demonstrate that he suffered "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348...this is a civil rights action.

Plaintiff believes this court will find by way of documented evidence, (as exhibits), will prove that several of the TCCO Rules/Policies, and Defendants, violated U.S. Const. Amendments and Other Affixed Thereby Rights. Punitive damages are available "where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights." Barnett v. MacArthur, 715 F. App'x 894, 904 (11th Cir. 2017).

4) TCCO's prohibition on "client relationships" is not logical, and conflicts with the United States Constitution's guarantees of equal protection and due process. TCCO's current policies (3.29 Healthy Relationships- 3.12 Client Marriages), deny homosexual/transgender couples the right to marry, and in doing so, demean their dignity for no legitimate reason. In equal protection cases when the government erects a barrier (namely the policies 3.12-3.29) to prevent one group from obtaining a benefit (in this case: unmarried gay residents wishing to marry), that another group receives (married heterosexual residents), the injury in fact is the denial of equal treatment resulting from the imposition of the barrier. The Equal Protection Clause of the Fourteenth Amendment Commands that no state shall deny to any person within its jurisdiction the equal protection of the laws. (U.S. Const. amend. XIV, sec.1). This essentially means that all persons similarly situated should be treated alike. These Policies bare no rational relationship to a legitimate governmental purpose or state interest. The foundation of the treatment curriculum is the building and establishing Healthy Relationships, Healthy Sex, and No More Victims. What does pink have to do with that?

5) The *only* place any of these "treatment goals" could possibly be practice, or even perfected if there is such a thing, is at the facility where the residents reside 24hrs. a day, 7 days a week. Plaintiff in this complaint also experienced discrimination of purposeful unequal treatment, was subjected to retaliatory harassment, and stereotyped characteristics not truly indicative of his abilities. The U.S. Supreme Court acknowledged, sexual orientation is so fundamental to a person's identity that one ought not be forced to choose between one's sexual orientation and one's rights as an individual-even if one could make a choice. These rights vest in every person whom the Constitution protects and, because they are so important, an individual's fundamental rights may not be submitted to vote and may not depend on the outcome of elections.

Mr. Washington was open and transparent with his therapist about his emotions for resident Jane Doe in December of 2019, and again discussed the dynamics of what a

romantic relationship should look like in this facility and relationship expectations on (1/18/20), resident Jane Doe had done the same as we shared the same therapist. Plaintiff requested a meeting in March of 2020 with my case manager, ultimately being put off due to case manager needing personal time off. I was finally able to speak with Rachel Kingston and case manager (in her office on 7/21/20) who was the unit supervisor for TCCO at the time. Upon sharing his feelings about Jane Doe with Defendant R. Kingston, he was told that the policy (3.29- Establishing Healthy Relationships) was clear and *"residents"* would not be allowed to have relationships with one another, and was given a special assignment, (see exhibits: TCCO/MTC Policies). With this coming out of sorts to be transparent and open about my sexuality and feelings for resident Jane Doe that truth was weaponized. At that moment the gates of hell were opened, and life has never been the same.

If not for these prohibitions against same-sex relationships/marriage amongst residents, Plaintiff and resident Jane Doe, would not have to continue the suffering and hateful indignant, discriminatory treatment from TCCO and MTC staff. Plaintiff would've been married or planning a wedding at the very least for the summer. The Defendants went to great lengths in making their vicious disdain for Mr. Washington's relationship known in very tangible ways. Inter-Racial (Black & White) relationships, Gay, and unfortunately Sex Offender creates the perfect Tri-fecta for hatred when met with homophobia at this facility.

<u>LEGAL AUTHORITY AND PRECEDENTS</u>

6) Family Law> Marriage > Nature of Marriage- The right to marry implicates additional rights that are protected by the 14th Amendment, including the rights to privacy, liberty, and association in marriage or relationships...the court considers sheltered by the 14th Amendment and protected against the State's unwarranted usurpation, disregard, or disrespect. This fundamental right to choose also entails the ability to marry the partner of one's choosing (see also Obergefell v. Hodges, _ U.S._, 135 S. Ct. 2584, 2602, 192 L. Ed. 2d 609).

In response to Obergefell, the same day it was announced, the district court a quo issued a one-paragraph order entitled "Order Granting Plaintiffs' Emergency Unopposed Motion To Lift the Stay of Injunction," stating that it "hereby LIFTS the stay of injunction issued on February 26, 2014 . . . and enjoins Defendants from enforcing Article I, Section 32 of the Texas Constitution, any related provisions in the Texas Family Code, and **any other laws or regulations** *prohibiting* a person from marrying another person of the same sex or recognizing same-sex marriage." This court sought and promptly received {2015 U.S. App. LEXIS 16} letter advisories from plaintiffs and the state, asking their respective positions on the proper specific disposition in light of Obergefell. Because, as both sides now agree, the injunction appealed from is correct in light of Obergefell, the preliminary injunction is AFFIRMED. This matter is REMANDED for entry of judgment in favor of the plaintiffs. The court must act expeditiously on remand and should enter final judgment on the merits

(exclusive of any collateral matters such as costs and attorney fees) by July 17, 2015, and earlier if reasonably possible.2 The mandate shall issue forthwith.

**7)** The Plaintiff in this case is a resident who desired to maintain the monogamous, established, committed relationship he had with resident Jane Doe, and requested the Application for Resident Relationships on Sept. 26,2020 as it was not available with the rest of the policy- (3.29 Establishing Healthy Relationships) in the law library, (see exhibits: 5-7). Plaintiff was told he'd have to write open records to receive a copy and did so twice which was further denied by open records, (see exhibits: Letters from O.A.G.). This was discussed with Plaintiffs' case manager as it made no sense to have to "request" to have a relationship with any resident I cohabitated with.

Plaintiff and his fiancée resident Jane Doe discussed this matter and moved to file for a marriage license with the intent to marry, (see exhibits: Texas Civil Commitment Rules #'s 29-30). So much so that the Plaintiff (Mr. Washington) had filed the Client Application for Request to Marry in September,2020; purchased an engagement ring and proposed. Resident Jane Doe said yes! Plaintiff, relying on the written word of Policy 3.12-Client Marriages; "The Texas Civil Commitment Office (TCCO) **shall permi**t clients to enter into <u>lawful marriages</u> and shall ensure proper procedures are in place for client marriages." **III. Texas Civil Commitment Center Clients: A.- Residents Request to Marry-#5. "**The TCCO ***shall not*** deny a client the right to enter into a <u>lawful marriage</u>. However, the TCCO shall ensure that the client has completed all prerequisites as set forth in this policy." Plaintiff claims marriage would have been lawful if encouraged and allowed between residents. Plaintiff in this situation again mentioned to TCCO that the Policy 3.12 (Client Marriage) does allow for residents to marry, but the unconstitutionality of Policy 3.29 (Healthy Relationships) contradict one another as one ***"The Gay"*** policy (3.29) prohibits any freedom of choice romantically. Plaintiff believes the "Ambiguity Doctrine" would apply in this particular case. The patent ambiguity doctrine, however, requires no actual knowledge of the other party's interpretation, and only imputed recognition of the ambiguity itself.

**8)** At this time Plaintiffs' "Request to Marry" Application was returned unanswered and unsigned. Plaintiff then filed a grievance which seemingly disappeared and was never answered or returned on or about October 2nd,2020. Here again the Plaintiffs were not even allowed to continue the committed relationship they had established in 2019. Constantly suffering vicious retaliatory harassment and disciplinary sanctions (one just for speaking to one another), in an attempt by the defendants to "break" Plaintiff and Jane Doe of their affection for one another, or *peaceable assembly*, with a great deal of Psychological Bullying (these allegations will be corroborated by former staff of MTC who will testify to the facts and documentation). Having a complete repudiation for residents' rights, is tantamount to saying that the remedy being offered is futile and of no effect.

Defendants (A. Beltran, R. Kingston, M. Arenivaz, and J. Winckler), *knew* of resident Jane Doe's emotional fragility as it is well documented of past attempts at self-harm due to bullying and harassment for amongst other thing's being transgender. They were repeatedly asked by plaintiff to "please stop" out of concern, and I even wrote a Communications/grievance on or about the 28th of September to the Captain asking him to address officer M. Arenivaz, because his personal dislike was becoming very aggressive, disrespectful, and unprofessional (see exhibit: "Capt. Scott Comm."). This harassment took place on a number of days (including July - Sept.29th,2020, Oct.3rd,2020, walking the breezeway, Oct. 4th,2020 around 2:05p.m. during gym call). Plaintiff also reported this to his group and therapist at group check-in (in July and August-2019) due to what seemed to be attempts by M. Arenivaz to provoke Plaintiff to become or react in a physical way, at times what he said was worse than what he did. This took place from July of 2020 until recently in May of 2021. Defendant was aware of, and had knowledge of the potential risk of serious self-harm and acted with total disregard in the face of that knowledge, continual harassment and deliberate indifference as their rule (no relationships) seemed to be more important than the well-being of fiancée, resident Jane Doe, which led to an attempted overdose, and being confined for a number of month's in isolation.

There were repeated attempts by plaintiffs' mother calling the Regional office in Henderson, Texas, and the Corporate Office in Centerville, Utah. She was finally able to speak with a gentleman named Michael Bell (Henderson, TX.), who said give him a little time and he would look into the matter. These calls took place over a number of months from January- May of 2021. I also spoke to one gentleman from the Regional Office who came to see me by the name of Mr. Kerry Dixon (5-25-21) at 4:55p.m. on my dorm, who said he would look into the situation for me. At the time of this filing nothing had changed. I told him I had only wanted M. Arenivaz to leave me and resident Jane Doe alone. The court will find the following facts regarding the parties in this case are undisputed and established in the pleadings and supporting declarations. All defendants with the exception of Defendant Marsh where sent Cease and Desist letters for harassment in or about April of 2021.

(i) Due Process Challenge

Plaintiff contends that the prohibition is discriminatory even under the Texas Constitution. In 2003, two cases significantly changed the treatment and protection of homosexuals under the law. First, the {975 F. Supp. 2d 644} United States Supreme Court ruled that the Due Process Clause of the Fourteenth Amendment {2014 U.S. Dist. Lexis 15} protected the sexual relations and privacy of gay men and lesbians. (Lawrence v. Texas,59 U.S. 588,578,123 S.Ct.2472,156 L. Ed. 2d 508) (2003). Second, the Massachusetts Supreme Court declared that the Massachusetts constitution protected the right of same-sex couples to marry, and therefore, that the state's ban on same-sex marriage violated its own state

constitution. Goodridge v. Dep't of Pub. Health, 440 Mass. 309, 798 N.E. 2d 941, 948, 969 (Mass. 2003).

**9)**  The Plaintiff has suffered real and particularized injuries as a direct result of Defendants' enforcement of TCCO's policies banning relationships or same-sex marriages among the residents at the Texas Civil Commitment Center. These injuries include far-reaching legal and social consequences, along with the pain of humiliation, stigma, and emotional distress. Furthermore, Plaintiff alleges he has suffered state sanctioned discrimination via TCCO, stigma, and humiliation as a result of TCCO's ban on same-sex marriage/relationships. Plaintiffs claim they are considered inferior and unworthy under the TCCO policies.

It is the Plaintiffs belief that stigmatic injury is a form of injury that supports standing in this case (see <u>Allen v. Wright,</u> 468 U.S. 737,755, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)) (finding that stigmatic injury often caused by discrimination is a type of noneconomic injury that may be sufficient to support standing) ;( see also Bostic, 2014 U.S. Dist. Lexis 19110, 2014 WL 561978, at *14) (same). In this case, it is clear that Plaintiffs suffer humiliation and discriminatory treatment under the law on the basis of his sexual orientation, and this stigmatic harm flows directly from TCCO's ban on same-sex relationships/marriage amongst clients.

"First we stigmatize a group (sex offenders) ...then we restrict that group's rights...then we take their persons...then we try to eliminate them through lack of care in hopes they die...then we kill them all. That is the final step. That is the only step left for those accused...of sex offenses. That is genocide."- *Earl Yarington*, Ph.D. <u>"Part 1: Civil Commitment and the Destruction of Human Rights"</u> (December 2019)

(a) Right to marry

**10)**  The presumptively innocent status of TCCC Residents, -Who have discharged their Criminal Sentences makes them individuals that require even closer scrutiny of limitations on their fundamental rights and liberties than is warranted when the same restrictions are placed on convicted inmates, whom by the way are allowed to marry, even in prison, without issue.

The U.S. Supreme Court has recognized that marriage involves one of the most intimate and personal choices a person may make in a lifetime. The right to marry is central to personal dignity and autonomy central to the liberty protected by the 14th Amendment <u>(Loving v. Virginia,</u> 388 U.S. 1, 12, 87 S. Ct.) Persons in a homosexual relationship may seek autonomy for these purposes, just as heterosexual persons do. Given the importance of marriage as a fundamental right and its relation to an individual's rights to liberty, privacy, and association, the U.S. Supreme Court has not hesitated to invalidate state marriage laws

whenever such laws (policies or regulations) intrude on an individual's protected realm of liberty.

The decision to marry is a fundamental right. Zablocki v. Redhail, 434 U.S. 374, 383, 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978). A unanimous Supreme Court held marriage is "one of the vital personal rights essential to the orderly pursuit of happiness by free men." Loving v. Virginia, 388 U.S. 1, 12, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967); see also Obergefell v. Hodges, U.S., 135 S. Ct. 2584, 2602, 192 L. Ed. 2d 609 (2015) (recognizing that it is the "right to marry in its comprehensive sense" that is the protected right and thus there must be "sufficient justification for excluding the relevant class from the right."). Thus, the Court finds it has subject matter jurisdiction over Vega's claim {2020 U.S. Dist. LEXIS 6} under § 1983 and denies Sawyer's motion to dismiss under Rule 12(b)(1). Plaintiff prays that this court issues an injunction prohibiting Defendants from enforcing TCCO's policies, Plaintiffs' injuries will be redressed. Plaintiff would be allowed to have a romantic relationship/marriage.

Here, Plaintiff also asserts that he has substantive due process rights, even as involuntarily civilly committed, and is challenging TCCO's refusal to approve his request to have a romantic relationship and marry. This is tantamount to a blanket prohibition on plaintiffs' "right to marry", and violates Turner. Mr. Washington believes this refusal to respond is also reckless indifference. (See Youngberg at 312-21. See Anderson v. Nosser, 5 Cir. 1971, 438 F.2d 183, 190, aff'd in pert. part, 456 F.2d 835 (en banc)), cert. denied, 1972, 409 U.S. 848, 93 S. Ct. 53, 34 L. Ed. 2d 89. (See Youngberg v. Romeo), (See Turner v. Safley //).

Legally, the Civilly Committed are looked at as Pre-Trial Detainees, -Who must be held under the least restrictive means necessary. In 1996, the Supreme Court held that a Colorado constitutional amendment targeting homosexuals based upon animosity lacked a rational relation to any legitimate governmental purpose. (See Romer v. Evans, 517 U.S. 620, 634-35,116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996)) (citing Dep't of Agr. V. Moreno, 413 U.S. 528, 534, 93 S. Ct. 2821, 37 L. Ed. 2d 782 (1973)) ("[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare. . .desire to harm a politically unpopular group *(I say,* namely sex offenders) cannot constitute a legitimate governmental interest.

Plaintiff (along with other residents), suffers a great deal of homophobia and racial animus due to being not only a gay couple, but an inter-racial gay couple. In 2003, the Court held that homosexuals had a protected liberty interest to engage in private, sexual activity; that homosexuals' moral and sexual choices were entitled to constitutional protection; and that moral disapproval {2014 U.S. Dist. LEXIS 26} did not provide a legitimate justification for a Texas law criminalizing sodomy. (See Lawrence, 539 {975 F. Supp. 2d 648} U.S. at 564, 571).

To claim that a loving, encouraging, pro-social relationship between residents is unhealthy would mean one has to aspire to have a "perfect" relationship in order to be granted one, and there is no such relationship which exist; to say otherwise would be the existence of

two "perfect" people.  No one has ever said why it's unhealthy, but that it just is...and "can you imagine what would happen if we *allowed* you two to have a relationship? Everyone would want one." This conversation took place with MTC staff and again with TCCO-cm (A. Beltran), on or about March 2021. No one at the facility being TCCO, MTC, or otherwise has ever complained about too many cheeseburgers; or too much cake and ice-cream being unhealthy. According to Asst. Facility Admin. Schmoker, TCCO gave him a really hard time, and "came down" on him about resident Jane Doe and I being intimate. Plaintiff apologized and told him we loved one another and made a choice with our heart, emotions, and rights versus the conflicting rules. He said the harassment would end ...it did not by Defendant M. Arenivaz.

 Therapist at the treatment facility are at odds, as most agree with Plaintiff, that there is no better place than the facility to help residents with the ups and downs which may come with relationships between two people romantically involved. It's difficult to understand how relationships between residents can be so unhealthy when TCCO has Plaintiff warehoused with 4oo others civilly committed, some of whom have been for ten years or more. Mr. Washington was also civilly committed in 2011. (See: Comment, Pre-Trial Detention: Constitutional Standards, 28 Ark.L.Rev. 129, 134 (1974)) ;(3 Ford L.J. 685, 692 (1975)). (See also Anderson v. Nosser, 438 F.2d 183, 190); (Note, Discipline in Jails: The Due Process Rights of Pre-Trial Detainees, 54 B.U.L.Rev. 796, 797 (1974)).

**11)**    TCCO Case managers (R. Kingston and A. Beltran), and the Staff Thereof (MTC-M. Arenivaz and J. Winckler), - are basically interfering with the Due Process, Equal Protection, and Family Rights of Mr. Washington, to Defend and Pursue Legal Strategies, to Aid Mr. Washington-the Plaintiff, in procuring his Constitutional Rights with continuous sanctions in an effort to deter him from litigating and wishing to marry. He has been caused Irreparable harm.

 In addition to looking at a history of discrimination, courts also consider whether the characteristics that distinguish the class indicate a typical class member's ability to contribute to society, (Cleburn,473 U.S. at 440-41); whether the distinguishing characteristic is "immutable" or beyond the group member's control, (Lyng v. Castillo,477 U.S. 635,638,106 S. Ct.2727, 91 L. Ed. 2d 527 (1986)); and whether the group is "a minority or politically powerless," (Bowen v. Gilliard, 438 U.S. 587, 602, 107 S. Ct. 3008, 97 L. Ed. 2d 485 (1987)).
Plaintiff argues that homosexuals fulfill all four factors to be considered a suspect or quasi-suspect classification, and therefore, that the court should review TCCO's 3.12- (Client Marriage Policy), 3.29- (Establishing Healthy Relationships) Policy, and same-sex marriage ban at the facility, under heightened scrutiny. The Supreme Court consistently applies heightened scrutiny to laws that discriminate against a group that it considers a suspect or

quasi-suspect classification, i.e. one that has experienced a "history of purposeful unequal treatment or [has] been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities." (Mass. Bd. Of Ret. v. Murgia, 427 U.S. 307, 313, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976)).
 The fear of backlash for being open and transparent about relationships and love for another in this program forces residents to live double lives of secrecy which ends up being harmful to the residents, by way of emotional suppression, and for fear of retaliation by being seen as problematic, not treatment focused, or internalizing treatment concepts and not progressing in tier advancement, just for falling in love.

This could not be further from the truth for the very acts of empathy and loving someone from a sacrificial and unselfish place in the hopes of building a future is the epitome of what good therapy is; giving the resident some semblance of autonomy.
 Residents should feel safe with the confidence that they can be open, honest, and transparent about their sexuality, emotions, and love for someone else without the fear of being ostracized, disenfranchised, or made to feel like an outcast, or **harassed to the point of self-harm.** Ridicule and fear can be suffocating, and even debilitating, especially in a treatment program. One another is the only family some of these residents will ever have. If one should be fortunate to ever be released from this type of confinement many will have nothing, and no one to be released to. Furthermore, TCCO's Policies (3.12-3.29) demeans one group of residents by depriving them of rights provided for others. As noted by the Supreme Court in Windsor:
Responsibilities, as well as rights, enhance the dignity and integrity of the person...

**12)**     The actual curriculum in the treatment book titled The Lead-Workbook states: "The purpose of this program is **not** to keep you from ever having sex. Rather, the goal is to help you choose to only **use** healthy sexual behavior. In fact, the **goal** is for you to have a really fun, exciting, hot, healthy sex life" (see exhibit-17). If this fact is indeed refuted, then it brings the whole agenda of this "program" into question. As residents here at the facility are not allowed to go out and meet new people in public, or socialize on the internet forging new relationships in any shape or form until possibly Tier 5 which could literally take years. In being denied physical contact with one another, Plaintiff (and Jane Doe) derive less value from the therapeutic treatment or training he (they) are meant to be afforded at TCCC. This became extremely taxing on Plaintiffs' mental health needing medication and begin to struggle in therapy; and sought help.

The decision to keep them separated represents a "substantial departure" from professional judgment or norms, as therapist' agreed we are "better together than apart;" after so much work, time, and emotional investment in one another to be better people.  Federal courts at all levels have recognized that violation of constitutional rights constitutes irreparable harm

as a matter of law. An injury is irreparable if money damages cannot compensate for the harm. No amount of money can compensate the harm for the denial of constitutional rights. Loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. The public interest is promoted by the robust enforcement of constitutional rights.

Plaintiff seeks a **preliminary injunction** enjoining Defendants from enforcing Policys'3.29-Establishing Healthy Relationships, and 3.12-Client Marriage, and a **declaratory judgment** that TCCO's ban on client relationships to one another, and in essence, same sex marriage; along with the programs failure to recognize a residents' primal needs are unconstitutional.

(1) Marriage as a fundamental right

**13)**     The Due Process Clause of the Fourteenth Amendment guarantees that all citizens have certain fundamental rights. See Planned Parenthood v. Casey, 505 U.S. 833, 846-47, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). Plaintiff and resident Jane Doe contend that TCCO's refusal to allow them to marry, pursuant to policy[s] 3.29- (Establishing Healthy Relationships, sec. V) and 3.12- (Client Marriages), deprives them of one of these fundamental rights. Plaintiffs argue that while states have the right to adopt regulations including defining marriage, such regulations may not infringe on an individual's fundamental constitutional rights. While the right to marry is not explicitly mentioned in the text of the Constitution, this right is nevertheless protected by the guarantee of liberty under the Due Process Clause. {975 F. Supp. 2d 658} For example, in Casey, the Supreme Court explicitly noted:

Marriage is mentioned nowhere in the Bill of Rights and interracial marriage was illegal in most {2014 U.S. Dist. LEXIS 55}States in the 19th century, but the Court was no doubt correct in finding it to be an aspect of liberty protected against state interference by the substantive component of the Due Process Clause in Loving v. Virginia.505 U.S. at 847-48; see Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 639-40, 94 S. Ct. 791, 39 L. Ed. 2d 52 (1974) (recognizing that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment); see also Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923) (holding the right to marry is a central part of the liberty protected by the Due Process Clause).

The policy denies access to the institution of marriage and its numerous rights, privileges, and responsibilities for the sole reason that plaintiffs' wish to be in a romantic relationship or married. It defies reason and logic to conclude that allowing two residents at the facility to engage in a romantic relationship with so many treatment providers available, (some of whom have marriage and family counseling backgrounds); will diminish the help given to be better versions of themselves in therapy that the married heterosexual couples receive. That is a lame excuse and an attempt to gaslight perceptions that same-sex couples would be worse off for being allowed to love one another here. That is a terrible thinking error of assumption, it's biased, and subjective at best supported by one's opinion only. The plaintiff and resident Jane Doe were a loving couple advancing and progressing in every aspect of

their lives and the treatment program before all of these issues begin. We worked hard to be better individuals and a great couple for one another, and our peers. It was the internalization of what we had been taught in the treatment program. Comparable to being potty-trained and then being punished for going to tee-tee.

Both opposite-sex and same-sex couples model the formation of committed, exclusive relationships, and both establish dreams and work to start anew based on mutual love and support. For some, that starts earlier than for others at the facility. In no way does this cause any hurt or harm to the public, or anyone else at the facility. Plaintiff alleges the equities greatly favor an injunction, as there is no harm from issuing a preliminary injunction that prevents the enforcement of a likely unconstitutional policy[s]. As noted in (Meyer v. Nebraska), a desirable end **cannot** be promoted by prohibited means... this cannot be coerced by methods which *conflict* with the constitution... and it hardly will be affirmed that any legislature (or policy) could impose such restrictions upon the people of a state without doing violence to both letter and spirit of the constitution.'

Plaintiff notes that a preliminary injunction is necessary because otherwise he will continue to suffer state-sanctioned discrimination and the stigma that accompanies it until he can enjoy the same rights as heterosexual couples. Plaintiff even offered a means in helping TCCO achieve the goal of allowing residents to have romantic relationships, and/or marriage by creating a couple's treatment program twice a month for six months every other Saturday. Changing the policy and allowing relationships/marriage amongst residents in no way harms the public, and nor does it restrain them from implementing the will of the people. After several attempts of written letters to the Deputy Director-Jessica Marsh, and Executive Director Marsha McLane, Plaintiffs' attempts were futile as I never received a response (see exhibits 18-20). I met defendant Marsh in April (2021) and her position was the same... she would not allow it. Even more egregious is the fact that Defendant Marsh is an <u>attorney</u>, and *knows* she's depriving plaintiff of his Constitutional rights. She is sworn to a code of ethics by the Bar Association as she was/is general counsel for TCCO.

**13)** Plaintiffs note that homosexuals have suffered a long history of discrimination. This long history of discrimination against homosexuals is widely acknowledged in Federal American Jurisprudence. (See, e.g., Lawrence, 539 U.S. at 571 ("[F]or centuries there have {2014 U.S. Dist. LEXIS 34}been powerful voices to condemn homosexual conduct as immoral" and "lesbians and gay men have suffered a long history of discrimination and condemnation."); (Rowland v. Mad River Local Sch. Dist., Montgomery Cnty., Ohio, 470 U.S. 1009, 1014, 105 S. Ct. 1373, 84 L. Ed. 2d 392 (1985)) (J. Brennan, dissenting) ("Moreover, homosexuals have historically been the object of pernicious and sustained hostility, and it is fair to say that discrimination against homosexuals is 'likely . . . to reflect deep-seated prejudice rather than . . . rationality.'"); (High Tech {975 F. Supp. 2d 651} Gays v. Def. Indus. Sec. Clearance Office, 895 F.2d 563, 573 (9th Cir. 1990)) ("[H]omosexuals have suffered a history of discrimination."); (Ben-Shalom v. Marsh, 881

F.2d 454, 465-66 (7th Cir. 1989)) ("Homosexuals have suffered a history of discrimination and still do, though possibly now in less degree."); (Baker v. Wade, 769 F.2d 289, 292 (5th Cir. 1985)) (noting that "the strong objection to homosexual conduct . . . has prevailed in Western culture for the past seven centuries").

Finally, Plaintiffs note that homosexual citizens constitute a minority group that lacks sufficient political power to protect themselves against discriminatory laws/policies. In fact, the history of same-sex marriage bans across the nation illustrates the historical lack of political power possessed by gays and lesbians. Plaintiffs point out that not only do homosexuals fit all factors to be considered a suspect classification, but {2014 U.S. Dist. LEXIS 39}in fact, several courts have already admitted as much. (See, e.g., SmithKline Beecham Corp. v. Abbott Labs, 740 F.3d 471, 480-84 (9th Cir. 2014)) (holding use of peremptory strike against gay juror failed heightened scrutiny); (see also Pedersen, 881 F. Supp. 2d at 294) (finding statutory classifications based on sexual orientation are entitled to heightened scrutiny); (Golinski v. Office of Pers. Mgmt., 824 F. Supp. 2d 968, 989 (N.D. Cal. 2012)) (same).

In a First Amendment Retaliation Case, the Complainant must prove that his protected speech was a substantial or motivating factor in the **State Agency's** –or- their **Agent's adverse decision(s) or actions against him repeatedly done by Defendants**. The timing of the State Agency's –or- their Agent's conduct, in relation to the Complainant's speech, may be circumstantial evidence of a retaliatory motive. PLAINTIFF states that He is Able to do this, in regards to TCCO and MTC's Actions against him that are part of the **ISSUE** of this Lawsuit, in addition to the deprivation of his rights with numerous documented sanctions. In (Lawrence, 539 U.S. at 576-77) (recognizing that individual decisions by consenting adults concerning the intimacies of their physical relationships {975 F. Supp. 2d 652} are "an integral part of human freedom". ("No credible evidence supports a finding that an individual may through conscious decision, therapeutic intervention or any other method, change his or her sexual orientation."); see also G.M. Herek, et al., Demographic, Psychological, and Social Characteristics of Self-Identified Lesbian, Gay, and Bisexual Adults in a U.S. Probability Sample, 7 Sexuality Res. & Soc. Pol'y 176, 186, 188 (2010) (noting that in a national survey, 95 percent of gay men and 84 percent of lesbian women reported that they "had little or no choice about their sexual orientation.").

## (B) JURISDICTION AND VENUE

**13)**Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1331, Federal Question of Rights Violations of the U.S. Constitution and Various Amendments and Inclusions, laws, or treaties of the United States, and 28 U.S.C. § 1343(a)(3) which authorizes Federal Courts to hear actions redressing the deprivation, under color of State Law, Ordinance, Regulation, Agency policy, Custom or Usage, or any Right, privilege or Immunity secured by the Constitution of the United States or by any Act of Congress providing for Equal Rights of Citizens or all persons within the jurisdiction of the United States; brought under 42 U.S.C. § 1983, §1985 & §1986

**14**) Venue is appropriate in this Federal Court as all parties are citizens of the United States of America.

**15**) Plaintiff seeks declaratory and preliminary injunctive relief pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 2202, 28 U.S.C. 2283, and 28 U.S.C. § 2284. Moreover, Plaintiff asserts no form of retaliation, deprivation of rights in the form of equal protection of the law, or equal privileges of law shall be conducted against him, for filing of this good faith cause of action

**16**) Mr. Washington, (hereinafter referred to as Plaintiff) hereby files and asserts his Original Complaint, and pursuant to the United States Code Service, Title 42 U.S.C. § 1983, §1985 & §1986-: 28 U.S.C. §§ 1711 et seq., and the Federal Rules of Civil Procedure, Rule 23(b) Plaintiff alleges Federal and State Civil Rights Violations and applicable Torts. Plaintiff avers that he has been significantly prejudiced by the DEFENDANT- (Marsha McLane)-EXECUTIVE DIRECTOR of the TEXAS CIVIL COMMITMENT OFFICE, and Others Directly +/or Indirectly as Indicated in this Complaint.

## (C) LEGAL BASIS FOR THIS LAWSUIT

**17**) All person within the jurisdiction of the United States shall have the same rights in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by (all) citizens….;.  **(c) Protection against impairment.**  The rights protected by this section are protected against impairment by nongovernmental discrimination **and impairment under color of State law**.


**18) NOTE: ALLEGATION: § 1985.  Conspiracy to interfere with civil rights - (***3)*** *Depriving persons of rights or privileges.***

If two or more persons in any State or Territory conspire, ..for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ..or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived **may have an action** for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. HISTORY:  Act R. S. § 1980.

**19) NOTE: <u>ALLEGATION:</u> <u>§ 1986.  Action for neglect to prevent conspiracy</u> ///May Apply More to Potential Co-Defendants than the Primary Defendant//**

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 USCS § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed,<u> shall be liable to the party injured</u>, .., for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; **and such damages may be recovered in an action on** the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action, .., the legal representatives of the deceased shall have such action therefor. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued. HISTORY:  Act R. S. § 1981.

**20) NOTE:  <u>§ 1983.  Civil action for deprivation of rights</u>**: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**(a)** Constitutional Law > Bill of Rights > Fundamental Freedoms > General Overview: A public official may not constitutionally prohibit the exercise of First Amendment rights according to his own conception of what may be the socially beneficial course.

**(b)** Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Prior Restraint
Constitutional Law > Bill of Rights > Fundamental Freedoms > General Overview
Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom

**(c)** Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > General Overview: Any prior restraint on expression comes to a court with a

heavy presumption against its constitutional validity. Prior restraints are generally decried because they tend to chill First Amendment freedom of expression; in the same manner, a prior approval rule has an adverse effect on the right of the correspondent to advocate in other forums ideas not popular with prison officials. U.S. Const. amend. I.

## (D) EXHAUSTION

**21)** Plaintiff avers that Civil Detainees like himself at the Texas Civil Commitment Center in Lamb County, Texas and confined pursuant to a Commitment under Chapter 841 of the Texas Health and Safety Code are exempt from exhaustion of remedies as the Prisoner Litigation Reform Act does not apply to them. (See: *Jackson v. Johnson, 475 F.3d 261- [5th Circuit] and Bell v. Wolfish, 441 U.S. 520- {1979}). However, for the record, Plaintiff has made use of the TCCO Grievance System without being provided with any remedy or relief.*

Parties are:

**22) PLAINTIFF-:  Mr. Will. Washington** with a Mailing Address of: 2600 South Sunset Ave., Littlefield. Texas 79339. (Plaintiff is an Involuntary Resident of the State of Texas by Application of Law.) Plaintiff wishes to seek a Class Designation/et al Qualification for this lawsuit when it applies to restrictions by the Defendant(s) upon All TCCC Residents.

**23) DEFENDANT-: Marsha McLane is** the EXECUTIVE DIRECTOR of the TEXAS CIVIL COMMITMENT OFFICE- with the Service Address at Work of: 4616 West Howard Lane, Building 2, Suite 350, Austin {Travis County}, Texas 78728. The Executive Director of TCCO who has deliberately deprived Plaintiff of his Constitutional rights and Fundamental Freedoms as mentioned. Continuously causing pain, suffering and irreparable harm by way of unconstitutional policies at the TCCC.

**24) DEFENDANT-: Amanda Beltran** is a TCCO Case Manager- with the Service Address at Work of: 2600 S. Sunset Ave., Littlefield {Lamb County}, Texas 79339. The TCCO Staff Member that enforces the DEFENDANT (Marsha McLane's) POLICY against the Plaintiff from June of 2020 until present. Which did cause a deprivation of rights and pain and suffering.

**25) DEFENDANT-: Rachel Kingston** is a TCCO Case Manager- with the Service Address at Work of: 2600 S. Sunset Ave., Littlefield {Lamb County}, Texas 79339. The TCCO Staff Member that enforces the DEFENDANT (Marsha McLane's) POLICY against the Plaintiff from June of 2020 until present, and was Unit Supervisor. Which did cause a deprivation of rights and pain and suffering.

**26) DEFENDANT-: James Winckler** is MTC CHIEF OF SECURITY- with the Service Address at Work of: 2600 S. Sunset Ave., Littlefield {Lamb County}, Texas 79339. The MTC Staff Member that enforces the DEFENDANT (Marsha McLane's) POLICY against the Plaintiff from July

of 2020 until present. Causing Severe Irreparable Harm to the Plaintiff via Deprivation of Constitutional Rights, Retaliatory Harassment, Access to Courts, and pain and suffering.

**27) DEFENDANT-: Michael Arenivaz** is MTC Security Staff Member- with the Service Address at Work of: 2600 S. Sunset Ave., Littlefield {Lamb County}, Texas 79339. MTC Staff Member that enforces the DEFENDANT (Marsha McLane's) POLICY against the Plaintiff January of 2020 until present. Causing Severe Irreparable Harm to the Plaintiff via Deprivation of Constitutional Rights, Retaliatory Harassment, Access to Courts, and pain and suffering.

**28) DEFENDANT-: Jessica Marsha** is the Deputy Director of the Texas CIVIL COMMIMENT OFFICE with the service address of 4616 West Howard Lane, Building 2, Suite 350, Austin {Travis County}, Texas 78728. Plaintiff cannot know the inner workings of TCCO and how the Primary Defendant and Possible Co-Defendants are meshed therein, but wrote repeatedly seeking relief and understanding which I believed Ms. Marsh could have granted given her position. She enforced and was complicit in the deprivation of Mr. Washington's Constitutional Rights. Plaintiff is saying he makes no objection to the Named Defendants seeking to add Additional Defendants.

**29)** The Defendants seemed to have at this point Destroyed my -: ISSUE 1-: FREEDOM OF INTIMATE ASSOCIATION-(1980) and Right to Marry, i.e. The Right to Form and Preserve certain intimate relationships without intrusion by the state, because the relationships safeguard individual freedom. Relationships protected are Familial in nature- Characterized by Deep Attachments, a High Degree of Commitment and the sharing of distinctly personal aspects of life.

// The State of Texas nor does the Defendant have a Legitimate Compelling Interest in preventing the Relationship the Plaintiff was engaged in. Nor did the Defendant have a legitimate reason to deny a Protected Fundamental Constitutional Right, or interfere with the established, monogamous, committed relationship that Jane Doe and Mr. Washington (Plaintiff) were having.

**30)** The Defendant has a Pattern and Practice of wanting to Dictate and Interfere with Interpersonal Relationships of her clients. Such as in: **a) TCCO POLICY 3.12 CLIENT MARRIAGES;** b**) TCCO POLICY 3.29 BUILDING HEALTHY RELATIONSHIP.**

*The Above have been Attached to the Lawsuit as* EXHIBITS

**31)** It would seem that the Defendant and her Policies CLASH with Some Bedrock Law, Such as:

a). **Constitutional Law > Substantive Due Process > Privacy > General Overview Criminal Law & Procedure > Criminal Offenses > Controlled Substances >**

**Possession > General Overview Constitutional Law > Substantive Due Process > Privacy > Personal Decisions**

_____The right to privacy extends to place limitations on a State's Powers to substantially regulate conduct pertaining to marriage, procreation, contraception, **family relationships**---- *PEYOTE WAY CHURCH OF GOD, INC., Plaintiff, v. EDWIN MEESE III, Attorney General of the United States, et al., Defendants UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION 698 F Supp 1342698 F. Supp. 1342; 1988 US Dist LEXIS 126181988 U.S. Dist. LEXIS 12618*

**Constitutional Law > Substantive Due Process > Privacy > General Overview:** People are protected from the government's intrusion into matters that are essential to their self-actualization and unrelated to an objectively identifiable legitimate government interest. "Privacy" refers in shorthand to the aspects of liberty that are ***impinged by governmental examination into intimate relations***


**Unreasonable Intrusion.**

"Privacy" refers in shorthand to the aspects of liberty that are ***impinged by governmental examination into intimate relations***. *JOHN WOODLAND, RAMDEO JAGASSAR, CHRIS GOSS, and Those Similarly Situated, Plaintiffs, versus CITY OF HOUSTON, et al., Defendants. UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION 918 F Supp 1047918 F. Supp. 1047; 1995 US Dist LEXIS 204001995 U.S. Dist. LEXIS 20400; 11 IER Cas (BNA) 84711 I.E.R. Cas. (BNA) 847 CIVIL ACTION H-82-1076*

_____**Constitutional Law > Substantive Due Process > Privacy > General Overview:** Every individual has the right to be free from undue interference by the state in important and intimate personal matters. Decisions concerning a person's sexual needs or desires are in a field that by definition concerns the most intimate of human activities and relations. *DONALD F. BAKER, Plaintiff, v. HENRY WADE, District Attorney of Dallas County, Texas, in his official capacity; and LEE HOLT, City Attorney of Dallas, Texas, in his official capacity; and the CLASS OF ALL CITY, COUNTY AND DISTRICT ATTORNEYS IN THE STATE OF TEXAS, in their official capacities, Defendants UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION 553 F Supp 1121553 F. Supp. 1121; 1982 US Dist LEXIS 164661982 U.S. Dist. LEXIS 16466 No. CA 3-79-1434-R*

**Constitutional Law > Substantive Due Process > Privacy > General Overview Criminal Law & Procedure > Criminal Offenses > Sex Crimes > Sexual Assault > Abuse of Adults > General Overview**: If the right of privacy means anything, it is the right of the individual, married or single, to be free of unwarranted government intrusion into matters fundamentally affecting a person as the decision to engage in private sexual conduct with another consenting adult.

**Constitutional Law > Substantive Due Process > Privacy > General Overview:** The right of privacy does extend to private, voluntary, ***intimate relationships between husband and wife, between unmarried males and females, between homosexuals***. Accordingly, homosexual conduct in private between consenting adults is protected by a

fundamental right of privacy. Any state restriction upon that right must be justified by some compelling state interest.

The point here is that the Defendant's and Her Subordinates + Contracted Staff are, prying into Interpersonal Relationships which is INTRUSIVE. They have to accept, the Convicted and then Released, Sex Offenders are not likely to find the Proverbial Sweet Polly Pure-Bread Relationship Partner and then Sexual Partners, but perhaps one another. By Overly Restricting and Quite Honestly Scarring Away Consenting Adult Partners, they are Sabotaging Their Client's Re-Integration into Society, and to constantly have their pasts blow up their futures, does not give or show any confidence in their "treatment program" or Plaintiffs' redemption.

## F) LEGAL STANDARDS

**32)** Granting a preliminary injunction to allow Residents to continue to use Resident-to-Resident legal correspondence system was not abuse of discretion where Residents could potentially suffer irreparable injury, Officials presented no evidence that continued communications would risk security, Residents may well prevail, and protecting constitutional rights of Residents outweighed public interest in minimizing court interference with Treatment Center system. Bear v Kautzky (2002, CA8 Iowa) 305 F.3d 802 / TCCC Staff have actually been using the COVID-19 Situation to Disrupt Residents from CONFERRING on Legal Matters and have sanctioned them/us for doing so. No Posted Rules in place.

**33)** _Thus the preliminary injunction that Mr. Washington seeks for intimate association with All Non-Victim Persons on the Planet Earth, His Family, Relationships with residents, Relatives, -Etc., and Ending TCCO's/The Defendant(s)' interference would not be an abuse of discretion by this court._

## ARGUMENT

**34)** The TEXAS CIVIL COMMITMENT CENTER'S-(TCCC'S) Fences do not form a barrier that separates the Plaintiff and Other TCCC Residents from the protections of the Constitution, nor

The Right to Access to Courts is a Fundamental Right and shall never be suspended.

## 35) Constitution of the State of Texas 1876 -/Texas State Constitution/Article I Bill of Rights - /Sec. 19.

Deprivation of Life, Liberty, etc.; Due Course of Law -: No citizen of this State shall be deprived of life, liberty, **property, privil**eges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

## DAMAGES

**1** OFFICIAL OPPRESSION -:

**2** EMOTIONAL DISTRESS AND MENTAL ANGUISH

**3** DEPRIVATION OF PERSONAL LIBERTY in 1st and 14th Amendment rights.

## CONCLUSION

The role of the judiciary is to resolve disputes by applying the law to the facts of a particular controversy, independently and impartially. One of the court's main responsibilities is to ensure that individuals are treated equally under the law. Equal treatment of all individuals under the law is not merely an aspiration-it is a constitutional {2014 U.S. Dist. LEXIS 78} mandate. Consequently, equal protection is at the heart of our legal system and is essential for the existence of a free society.

In conclusion I hope that this court will see the Psychological Lynching and Emotional Raping I 've (we've) had to endure. I would not waste the court's time with a frivolous issue I could handle on my own. I am not an attorney and I'm ignorant when it comes to the law, but I do know how to read, comprehend, and know the difference between right and wrong.

What's being done to me (us as Resident's) in "supposedly" a treatment program is **absolutely wrong**. I don't have all the eloquent legalistic words in knowing how to move the court to compassion, but given the opportunity I believe I can definitely, with the court's help, argue my point with common sense and win. Based on the Constitutional Law (if I've understood it right as written); I should've been allowed to have a romantic relationship and marry the individual I love... civilly detained or not. Granted relief from this court I will be able to do so. My (our) fundamental rights as a resident here will be realized and I will hopefully be seen as a human being first, a reformed man, and not as a sex offender 20 plus years removed. It's incomprehensible that I should have to write from a treatment program that's established to "help" people. I (we) simply fell in love.

### L) PRAYER

**36)** Plaintiff prays that after Trial by Judge, this Court shall award the Plaintiff all damages and relief he is justly entitled to... A Fundamentally Protected "RIGHT TO MARRY".

UNSWORN DECLARATION: I, William Washington, Declare- Under the Penalty of Perjury, that the Statements, Allegations and Aversions herein this Complaint, - Are True and Correct, to the Best of My Knowledge and Belief.

BY: *[signature]*

Respectfully Submitted By

*[signature]*

Mr. Will. Washington
2600 South Sunset Drive
Littlefield, Texas      79339

**NOTE:** This is a Pro Se Filing by a person who is not an attorney and only has limited legal resources at his disposal, Patience and Liberality are respectfully requested in evaluating this pleading for requested relief.