**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **WILLIAM WASHINGTON,**<br>       **PLAINTIFF,**<br><br>V.<br><br>**MARSHA MCLANE, ET AL.,**<br>       **DEFENDANTS.** | **C.A. No. 1:21-CV-00521** |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**TO THE HONORABLE JUDGE OF THIS COURT:**

Defendants Marsha McLane ("McLane"), Jessica Marsh ("Marsh"), Amanda Beltran ("Beltran"), and Rachel Kingston ("Kingston") (collectively, "Defendants"), through the Office of the Attorney General ("OAG"), file this motion to dismiss Plaintiff William Washington's ("Washington") claims against them pursuant to Fed. R. Civ. P. 12(c). In support thereof, Defendants respectfully offer the following:

**I.     STATEMENT OF THE CASE**

Plaintiff Washington is a Sexually Violent Predator ("SVP") currently, and at all times relevant to this litigation, civilly committed and housed by the Texas Civil Commitment Office ("TCCO"). ECF No. 1. Proceeding *pro se* and *in forma pauperis*, Plaintiff filed this 42 U.S.C. § 1983 lawsuit on June 14, 2021, against multiple employees of both TCCO and the Management & Training Corporation ("MTC") in their official and individual capacities. *Id*. Plaintiff alleges Defendants violated his First and Fourteenth Amendment rights. *Id*. Specifically, Plaintiff claims that TCCO

Policies 3.29 and 3.12 violate his civil rights because he is not allowed to marry based on his sexual orientation. ECF No. 1 at 3-4 and s*ee generally* Exhibit A (TCCO Policies 3.12 and 3.29 with Supporting Declaration).[1]

The current version of TCCO Policy 3.12, among other things, allows TCCO clients to enter into lawful marriages and requires clients to submit a request to the client's case manager in order to do so. *Id.* at 0002-0003. Further, TCCO Policy 3.12 requires a case manager to approve the marriage request as long as the following criteria are met: (1) the requested date and time does not interfere with the client's treatment; (2) the location of the wedding is appropriate based on supervision level; (3) the proposed spouse is single; (4) the proposed spouse is not a victim of the client; and (5) the proposed spouse is an approved chaperone. *Id.* at 0003.

TCCO Policy 3.29 sets the criteria for a potential romantic relationship contact. *Id.* at 0008. Romantic relationship contacts, just like standard contacts and chaperones, are required to have prior approval. *Id.* Further, TCCO Policy 3.29 does not approve potential romantic chaperones if they are "an inmate, or on community, parole, or federal supervision, on civil commitment, or has pending criminal charges." *Id.* at 0010.

Neither TCCO Policy 3.12 or 3.29 differentiate or ban romantic relationships or potential spouses based on the sexual orientation of the client or proposed individual. *See generally* Exhibit A.

---

[1] Because Washington references TCCO Policies 3.12 and 3.29 in his complaint and attaches them as exhibits to his complaint, the Court may consider its contents at the 12(c) stage. *See Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

Washington sues Defendants seeking: (1) a preliminary injunction preventing the enforcement of the alleged unconstitutional policies; (2) a permanent injunction barring enforcement of TCCO's Policies (3.12 and 3.29); and (3) declaratory judgment against TCCO's alleged ban on client relationships/marriage to each other. ECF No. 1 at 3.

## II. LEGAL STANDARD

After the pleadings have closed, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). This motion should be viewed under the same standards as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). A party is entitled to dismissal under Federal Rule of Civil Procedure 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) *(*quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic Corp.*, 550 U.S. at 556).

Thus, while the complaint need not contain "detailed factual allegations," it must go beyond mere "labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atlantic Corp.*, 550 U.S. at 555. "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft*, 556 U.S. at 679.

### III.   ARGUMENTS

#### a. *Washington's official capacity claims are barred by the Eleventh Amendment*

To the extent that Washington is suing Defendants for money damages in their official capacities, his claim is barred by the Eleventh Amendment to the Constitution. Neither a state nor a state official sued in his or her official capacity for damages is a "person" for purposes of liability under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Moreover, a suit for damages against a state official in his official capacity is not a suit against that individual but a suit against the state. *Id*. The Eleventh Amendment to the United States Constitution bars such suits against a state unless the state has waived its immunity or Congress has abrogated immunity pursuant to its power under § 5 of the Fourteenth Amendment. In passing 42 U.S.C. § 1983, Congress "had no intention to disturb the States' Eleventh Amendment immunity." *Id*.

Neither Congress nor the State of Texas has waived its Eleventh Amendment immunity with regard to 42 U.S.C. § 1983. The Eleventh Amendment bar against monetary damages in federal court therefore remains in effect when state officials

are sued for damages in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Therefore, to the extent Washington is suing Defendants in their official capacities for money damages, the Eleventh Amendment bars his claim for money damages and any claims against them on this basis must be dismissed for failure to state a claim upon which relief can be granted.

To the extent Washington sues Defendants in their individual capacity for prospective, injunctive relief, his requested relief does not fall under the *Ex parte Young* limited exception doctrine ("*Ex parte Young*"). *Ex parte Young* provides a limited exception to Eleventh Amendment immunity for official capacity claims when the suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution" or other federal law. *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 413–14 (5th Cir. 2004). However, when a plaintiff invokes *Ex parte Young* to sovereign immunity, courts must remain mindful that injunctive relief is "to be used sparingly, and only in a clear and plain case." *Rizzo v. Goode*, 423 U.S. 362, 378, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976) (quoting *Irwin v. Dixion*, 50 U.S. 10, 13, 13 L. Ed. 25 (1850)).

This is particularly true where a government agency is involved, since a government agency is granted the "widest latitude in the dispatch of its own internal affairs." *Id.* at 378–79; *see also Lewis v. Casey*, 518 U.S. 343, 349, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) ("[I]t is not the role of courts, but that of the political branches,

to shape the institutions of government in such fashion as to comply with the laws and the Constitution.").

In this case, Washington seeks sweeping injunctive relief as detailed above. ECF No. 1 at 3. This relief does not fall within the narrow parameters of *Ex parte Young* and because he seeks to broadly change the internal affairs of a governmental agency, his requested relief should be denied, and thus, his claims against Defendants in their official capacities should be dismissed.

### b. Washington fails to state any Constitutional violation.

Washington has not stated any constitutional violation to give rise to recovery under 42 U.S.C. § 1983. *See Baker v. McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979); *Thorne v. Jones*, 765 F.2d 1270, 1272 (5th Cir. 1985). Washington alleges Defendants violated his Fourteenth and First Amendment rights to marry and associate when his request to marry another TCCO client was denied. ECF No. 1 at 2. However, as described below, none of Washington's allegations rise to the level of a constitutional violation, and thus all of his claims should be dismissed for failure to state a claim.

#### i. Washington failed to state a Fourteenth Amendment Equal Protection claim against Defendants.

The Equal Protection Clause of the Fourteenth Amendment requires essentially that all persons similarly situated be treated alike. *Stefanoff v. Hays Cty., Tex.*, 154 F.3d 523, 525–26 (5th Cir. 1998) (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996)). To prove an equal protection cause of action under 42 U.S.C. § 1983, the plaintiff must demonstrate that the defendants acted with a

discriminatory purpose. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992).

Here, Washington cannot make a colorable equal protection claim because, as attached to his complaint, both TCCO Policies 3.12 and 3.29 apply to all TCCO clients, regardless of their sexual orientation. *See* ECF No. 1 Exhibits 1 and 2; *See generally* Exhibit A. While Plaintiff claims the policies deny homosexual/transgender couples the right to marry, he fails to show how Defendants created a classification of clients and treated them differently than other clients. *Id.*

The policies do prohibit clients from marrying other civilly committed individuals, they do not prohibit a homosexual or transgender client from marrying someone who would otherwise meet the requirements for an approved partner. *Id.* Further, Washington fails to show that Defendants acted with a discriminatory purpose. *See generally* ECF No. 1. Outside of making conclusory statements about discrimination, Washington provides no facts to indicate Defendants had a discriminatory purpose by not allowing offenders to marry other civilly committed individuals. *Id.* Accordingly, Washington's Fourteenth Amendment Equal Protection claims against Defendants should be dismissed for failure to state a claim.

### ii. Washington failed to state a Fourteenth Amendment Substantive Due Process violation.

A substantive due process analysis is appropriate only in cases in which

government arbitrarily abuses its power to deprive individuals of constitutionally protected rights, namely a constitutionally protected liberty or property interest. *Simi Inv. Co. v. Harris Cty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (internal quotation marks and citations omitted). The "substantive due process analysis," the Supreme Court has cautioned, "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993). The alleged liberty interest must be "carefully formulat[ed]" and must be "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997).

In the context of civil commitment, an individual's liberty interests are considerably less than those held by members of the free society. *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (citing *Wilkinson v. Austin*, 545 U.S. 209, 224–26, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) and *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)); *see Kansas v. Hendricks*, 521 U.S. 346, 368 n.4, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997) (stating that officials "enjoy wide latitude in developing treatment regimens [for SVPs]"); *Brown v. Taylor*, 911 F.3d 235, 243 (5th Cir. 2018) (noting that "the Constitution . . . affords a state wide latitude in crafting a civil commitment scheme" because "the state legislatures not only are equipped, but also possess the democratic mandate, to make difficult policy choices regarding the supervision and treatment of sexually violent predators" (citations omitted)).

In *Brown v. Taylor,* the Fifth Circuit stated, for individuals who are civilly committed, "due process requires only that 'the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed.'" *Brown*, 911 F.3d at 243 (quoting *Seling v. Young*, 531 U.S. 250, 265, 121 S. Ct. 727, 148 L. Ed. 2d 734 (2001)).

The Texas Civil Commitment Statute authorizes the civil commitment of SVPs for the purpose of "long-term supervision and treatment." Tex. Health & Safety Code Ann. § 841.001 (West). Further, the Fifth Circuit held, Texas maintains "twin goals of 'long-term supervision and treatment of sexually violent predators.'" *Brown*, 911 F.3d at 243 (quoting Tex. Health & Safety Code Ann. § 841.001).

Here, Washington has not pleaded sufficient facts demonstrating TCCO's Policy that restricts him from marrying another SVP lacks a reasonable relation to these goals. *See* ECF No. 1. Moreover, Washington pleads no facts and supplies no exhibits to support his contention that he is not able to marry based on his sexual orientation. *See generally* ECF No. 1.

Accordingly, where Washington does not allege facts suggesting that Defendants imposed conditions unrelated to Texas's goals of supervision and treatment,[2] his substantive due process claims against Defendants must fail. *See generally DeMarco v. Davis*, 914 F.3d 383, 386–87 (5th Cir. 2019) (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."); *Brown*, 911 F.3d

---

[2] Defendants would note numerous scenarios in which allowing two clients to marry each other would result in treatment problems and likely pose a security risk based on differing Tier levels.

at 243 (explaining that in the context of a substantive due process claim, "restrictive conditions alone do not state a due process claim"); *Thompson v. Fourth Jud. Dist. Ct., Ouachita Par.*, No. 3:12-CV-1645, 2012 WL 6600338, at *3 (W.D. La. Sept. 25, 2012) (citing *Ashcroft*, 556 U.S. at 679) (explaining that "in order to be afforded the benefits of this assumption [that plaintiff's factual allegations are true] a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations").

As Washington has failed to plead any facts suggesting the conditions TCCO imposes on their clients are unrelated to Texas' goals, his substantive due process claim must fail for failure to state a claim and should be dismissed.

### iii. *Washington fails to allege a First Amendment claim against Defendants.*

While civilly committed persons retain First Amendment rights, restrictions on those rights are permissible "so long as they advance the state's interest in security, order, and rehabilitation." *Bohannan v. Doe*, 527 F. App'x 283, 294 (5th Cir. 2013) (citing *Ahlers v. Rabinowitz*, 684 F.3d 53, 58, 64 (2d Cir. 2012)).

The test for claims regarding freedom of speech and association in the context of civil commitment is whether the restrictions are reasonably or rationally related to the purposes for which the individual was committed. *See Chriceol v. Phillips*, 169 F.3d 313, 316 (5th Cir. 1999); *see also Allen v. Seiler*, No. 4:12-CV-414-Y, 2013 WL 357614 at *5 (N.D. Tex. Jan. 30, 2013), *aff'd*, 535 Fed.Appx. 423 (5th Cir. 2013). The court considers four factors: (1) whether the restriction has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are

alternative means of exercising the rights that remain open to inmates; (3) the impact that accommodation of the asserted constitutional rights will have on other inmates, guards, and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at a *de minimus* cost to valid penological interests. *Chriceol* 169 F.3d at 316.

Washington bears the burden of establishing that TCCO's ban on marrying other SVPs is unreasonable, and "substantial deference" must be given to the judgments of TCCO staff. *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003). Here, Washington first fails to meet his burden as he does not allege any facts to show TCCO's policies are unreasonable. *See generally* ECF No. 1. Further, the Supreme Court found restrictions regarding communication between inmates was allowed because inmates could still communicate with non-criminals." *Turner v. Safley*, 482 U.S. 78, 92, 107 S. Ct. 2254, 2263, 96 L. Ed. 2d 64 (1987) Washington does not allege that he cannot get married generally, nor does he allege facts to show TCCO is restricting his marriage based on his sexual orientation. *See* ECF No. 1.

Just as Washington's substantive due process claims fail because he relies solely on conclusory allegations, so does his first amendment claim. *See generally DeMarco v. Davis*, 914 F.3d 383, 386–87 (5th Cir. 2019). Washington's allegations and exhibits fail to demonstrate that TCCO's restrictions on marriage do not advance the state's interests. *See generally* ECF No. 1. Accordingly, because Washington has failed to allege facts sufficient to maintain a First Amendment claim against

Defendants, they should be dismissed.

### c. *Washington fails to overcome Defendants' entitlement to qualified immunity.*

To the extent Washington sues Defendants in their individual capacity, Washington fails to plead sufficient facts to overcome Defendants' entitlement to qualified immunity. Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (internal quotation omitted). Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar her recovery. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

The qualified immunity analysis has two steps, which can be taken in either order. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "First, [the Court should] assess whether a statutory or constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, the Court should "determine whether the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). "If the defendant's actions

violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.*

As detailed above, Washington has not alleged a knowing violation of any clearly established constitutional right. Even assuming Washington's alleged facts to be true, he has not alleged facts that rise to the level of a constitutional claims. Therefore, Defendants are entitled to qualified immunity, and all claims against them in her individual capacity should be dismissed.

## IV. CONCLUSION

Defendants request that Washington's claims against them be dismissed as they either lack of subject-matter jurisdiction or they fail to state a claim upon which relief may be granted. Should the Court deny all or part of this motion, Defendants respectfully reserve the right to deny allegations against them and reassert their defenses in a motion for summary judgment.

Respectfully Submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

    **SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ *Heather L. Dyer*
**HEATHER L. DYER**
Assistant Attorney General
Attorney-in-Charge
Texas State Bar No. 24123044
Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814
heather.dyer@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS MCLANE, MARSH, BELTRAN, and KINGSTON**

## NOTICE OF ELECTRONIC FILING

I, **HEATHER L. DYER**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Western District of Texas, on February 24, 2022.

*/s/ Heather L. Dyer*
**HEATHER L. DYER**
Assistant Attorney General

## C<small>ERTIFICATE</small> O<small>F</small> S<small>ERVICE</small>

I, **H<small>EATHER</small> L. D<small>YER</small>**, Assistant Attorney General of Texas, hereby certify that a true and correct copy of the above has been served on February 24, 2022, to:

| <u>*VIA CMRR #*</u><br>**William Washington**<br>**Texas Civil Commitment Center**<br>2600 S. Sunset Ave.<br>Littlefield, TX 79339<br>**Plaintiff *Pro Se*** | <u>*VIA E-MAIL*</u><br>**Amber R. Pickett**<br>Amber.Pickett@lewisbrisbois.com<br>LEWIS, BRISBOIS, BISGAARD & SMITH, LLP<br>2100 Ross Avenue, Suite 2000<br>Dallas, Texas 75201<br>Telephone: (214) 722-7105<br>Facsimile: (972) 638-8664<br>*Counsel for Defendants James Winckler and Michael Arenivaz* |
|---|---|

                                      */s/ Heather L. Dyer*
                                      **H<small>EATHER</small> L. D<small>YER</small>**
                                      Assistant Attorney General